**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**THOMAS J. MacWILLIAMS,**

        **Petitioner,**

**v.**                                   **Civil Action No. 1:08cv126**
                                       **Criminal Action No. 1:06cr59-1**
**UNITED STATES OF AMERICA,**     **(JUDGE KEELEY)**

        **Respondent.**

## REPORT AND RECOMMENDATION
## THAT §2255 MOTION BE DENIED

### I. Introduction

On June 23, 2008, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1]  On July 1, 2008, the undersigned determined that summary dismissal of the petition was not warranted and the respondent was directed to file an answer.[2]  The Government filed its response on July 23, 2008.[3]  Petitioner filed a Reply to the Government's response on August 18, 2008.[4]

### II. Facts

**A.  Conviction and Sentence**

On July 11, 2006, petitioner and one other individual were named by a federal grand jury in each count of a three-count indictment.  On September 18, 2006, petitioner signed a plea agreement

---

[1]Dkt. No. 120.

[2]Dkt. No. 124.

[3]Dkt. No. 127.

[4]Dkt. No. 128.

in which he pled guilty to Count 3,[5] a charge with a potential sentence of not more than twenty

years, a fine of not more than $500,000, a three-year period of supervised release, and a mandatory

assessment of $100.[6]  In the plea agreement, the parties stipulated and agreed that petitioner's total

relevant conduct was at least 40 but less than 60 kilograms of marijuana, and that defendant was a

career offender pursuant to §4B1.1(a).  Petitioner also agreed to a limited waiver of his appellate

rights but did not waive the right to collaterally attack his sentence.  Specifically, the petitioner's

plea agreement contained the following language regarding his waiver:

> 12.  The above paragraph not withstanding, the defendant will retain his appellate
> rights with respect to any sentence imposed above the applicable Guideline range at
> an adjusted offense level subtotal 33 or higher.  This reservation of rights is designed
> to ensure that the United States and the defendant retain the benefits of the plea
> agreement. It is not intended to represent the defendant's estimation of what an
> appropriate or reasonable sentence would or should be.  Nor does this reservation of
> rights prevent the defendant from arguing for a sentence below the aforementioned
> adjusted Guideline offense levels.  The United States will retain the right to appeal
> any sentence imposed.

(Plea Agreement, Dkt. No. 59 at 4).

On September 29, 2006, petitioner entered his guilty plea in a plea hearing in open court.

Petitioner was 42 years old and had obtained a GED.  (Dkt. No. 90 at 4).  The Government

summarized each paragraph of the plea agreement for the Court, including the  paragraph 12 *supra*.

The Court then asked petitioner whether he understood and agreed with the terms contained in the

agreement and he said yes.  (Id. at 14).  The Court asked petitioner if anything further had been

agreed to, either orally or in writing, that was not contained in the plea agreement, and petitioner

---

[5]The offense charged in Count 3 was "using and maintaining a drug-involved premise for the purpose of
manufacturing, possessing with intent to distribute, distributing and using a controlled substance, marijuana,  a
Schedule I drug controlled substance, in violation of Title 21, U.S.C. § 856(a)(1) and Title 18, U.S.C. § 2."

[6]Counts 1 and 2 of the indictment (conspiracy and the aiding and abetting in manufacturing marijuana)
against petitioner were later dismissed.

denied that there was anything further. (Id. at 14).  The Court specifically asked petitioner if he understood the limited waiver of appellate rights he was making and petitioner said that he did. (Id. at 17 and 20).  The Court asked petitioner if he understood the consequences of pleading guilty and he said that he did.  (Id. at 20).  The Court then inquired of petitioner's counsel whether he believed that petitioner fully and completely understood the consequences of pleading guilty, and petitioner's counsel also said "yes." (Id. at 20).  The Court reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 18-20), and then the Government presented the testimony of Trooper John Wayne Smith to establish a factual basis for the plea. (Id. at 21 - 23).  The petitioner did not contest the factual basis of the plea.

After the Government presented the factual basis of the plea, petitioner advised the Court that he was guilty of Count 3 of the indictment. (Id. at 24).  Petitioner further stated under oath that no one had threatened, coerced, or harassed him to get him to plead guilty.  (Id. at 24).  In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement, that his attorney had fully and adequately represented him, and had left nothing undone. (Id. at 25).  Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty, that he had indeed done what the witness Smith said he had done.  (Id. at 24).  When the Court asked if petitioner if he knew of any defense to the charges  in Count 3 to which he was pleading, defense counsel stated that they had filed a "viable suppression motion" that they later chose not to pursue in exchange for the Government's plea offer to dismiss the remaining counts in the indictment, charges which carried more time. (Id. at 25).  When asked by the Court if he had voluntarily agreed with the decision to forgo pursuing his motion to suppress, petitioner said that he had. (Id.).  Petitioner's counsel denied that he had been able to find any other defense to the charges.  (Id. at 26)

At the conclusion of the hearing, the Court determined that the plea was freely and voluntarily made, that petitioner was competent and capable of entering an informed plea, understood the consequences of pleading guilty. The Court commented as an aside that petitioner had made a rational choice in choosing to plead guilty to Count 3. (Id.). Further, the Court found that there was a basis in fact for the plea to Count 3 and that it would recommend that the District Court accept it. Petitioner did not object to the Court's finding.

On October 13, 2006, a Report and Recommendation (R&R) on the Plea of Guilty was entered by the undersigned. (Dkt. No. 60). Neither party filed any objection to the R&R, and on October 26, 2006, the district judge entered an Order adopting it, accepting the plea, adjudging petitioner guilty, and directing that the pre-sentence report (PSR) be prepared. (Dkt. No. 62).

On February 14, 2007, a sentencing hearing was held. Petitioner advised the Court that he and defense counsel had gone over the PSR in preparation for the issues to be addressed that day. (Dkt. 89 at 3). The Court found that petitioner had a base offense level of 20, but a Chapter 4 enhancement based on two prior felonies, an involuntary manslaughter and a felony controlled-substance offense, raised his Guideline level from 20 to 32, a twelve-level increase. However, he then received a two-level reduction for acceptance of responsibility, and a further third level reduction was granted on the Government's motion, for a total offense level of 29. His criminal history category, which would have been 4, became a 6 after the career offender calculation; that, along with the total offense level of 29, gave an applicable sentencing range of 151 to 188 months imprisonment. (Id. at 4 - 6). Neither party objected to the Court's tentative findings. (Id. at 6).

Defense counsel then addressed his objection to the PSR, conceding that although petitioner met the definition of a career offender, mitigating circumstances should be considered, expanding

on arguments in support of his motion for a variant sentence previously briefed in his Memorandum in Aid of Sentencing (Dkt. No. 77). He described petitioner's prior involuntary manslaughter conviction as a "freak tragic accident"[7] occurring 18-19 years earlier, that, albeit a crime of violence, had no element of intent. Counsel also assured the Court that at the time petitioner committed the present crimes he was unaware that those crimes could potentially earn him career offender status, and he would not have committed them had he realized. Further, counsel argued, petitioner's present crime involved no firearms or violence, and finally, that petitioner would still be facing an unserved Ohio sentence for complicity in marijuana trafficking when he finished serving the present federal sentence. (Dkt. No. 89 at 7 - 9).

The Government then argued for a 169-month sentence in the middle of the applicable range, pointing out that the dismissal of the remaining two counts had already spared petitioner a career offender status calculation starting at level 34 instead of 31, with a potential sentence of 188 to 235 months. The Government averred that a variant sentence was not warranted under any circumstance as all the cases cited in support of petitioner's motion for a variance were factually very different from petitioner's: petitioner was not a young person who had led a previously law-abiding life and then made a mistake; his crimes were involuntary manslaughter, and then, years later, a 900-pound marijuana manufacturing conviction; in no way was he a "small-time drug dealer[]." In support of its position, the Government recounted petitioner's significant involvement in the Ohio marijuana trafficking; his failure to report to serve that sentence; his move to this jurisdiction as a fugitive living under an alias; the large number of marijuana plants involved in the present crime as proof

---

[7]Attached to the PSR was a "somewhat passionate letter from the stepbrother of the victim" written on behalf of petitioner, characterizing the death as such, describing the event, when the victim, a close lifelong friend of petitioner, grabbed the gun he was holding and it went off, killing him. (Id. at 7 - 8).

that he "never left that drug activity . . . exactly the type of person for whom Congress intended the career offender designation . . . a recidivist[.]"

Defense counsel then countered, pointing out that other district courts give variant sentences below career offender guidelines; cases do not need to be factually identical to warrant variance; and finally, that the prior involuntary manslaughter conviction was 18 years old, not intentional, and, had it occurred in West Virginia, would only have been a misdemeanor with a one-year sentence.

The Court acknowledged both parties' compelling arguments, but denied petitioner's motion for a variance and sentenced him as a career offender, albeit at the lowest end of the guideline range, noting the "huge bump because of this career offender status . . . and [taking] into account . . . your acceptance of responsibility and truthfulness of your disclosures to the Government as well as the fact that you're a career offender." (Id. at 13 - 15). Petitioner was sentenced to one hundred and fifty-one (151) months imprisonment with credit for time served since May 7, 2006, to be followed by three (3) years of supervised release, beginning after his release from the unknown term of imprisonment still pending for charges in the state of Ohio, and payment of the mandatory special assessment of one hundred dollars. (Id. at 15 - 17). The Government objected, reiterating its request for a 169 month sentence; petitioner did not object. (Id. at 16 - 17).

At the conclusion of the hearing, the Court advised petitioner that since his plea agreement specified that he retained appellate rights only for a sentence imposed above the applicable Guideline range at an adjusted offense level subtotal of 33 or higher, the bulk of his appellate rights were waived, as his adjusted offense level subtotal of 32 was within range. The Court further noted petitioner had retained his § 2255 habeas corpus rights. (Id. at 19 - 21). The Court then explained the appeals process to petitioner, in the event he believed he had any issue for appeal. (Id. at 20 -

21).  Counts 1 and 2 were dismissed and the hearing was adjourned.

**B.  Direct Appeal**

On February 22, 2007, petitioner filed a Notice of Appeal in this Court. (Dkt. No. 85).  On July 7, 2007, petitioner's counsel filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967) in the Fourth Circuit Court of Appeals, raising one issue but stating that it was his opinion that there were no meritorious issues for review.  Petitioner then filed his own *pro se* brief, claiming that his guilty plea was coerced and that his 151-month sentence was improperly calculated, as was the application of the career offender guideline.  On November 20, 2007, the 4th Circuit dismissed his appeal in an unpublished opinion, finding that both his plea and his waiver of the right to appeal any sentence based on an adjusted offense level below thirty-three were knowing and voluntary. Mandate on the decision issued on January 10, 2008.

On November 30, 2007, petitioner filed a *pro se* Notice of Appeal of the district court's November 15, 2007 Order denying his Motion for an Order Compelling the Release of Evidence to Appellant. (Dkt. No. 107).   The 4th Circuit reviewed the record, and finding no reversible error, affirmed the district court's ruling on May 28, 2008. Mandate issued on July 21, 2008.

In his § 2255 motion, petitioner, without providing a date or any other information, claims that he filed a petition for a writ of certiorari to the United States Supreme Court that was rejected as time-barred.  No record of this petition can be found with either the Fourth Circuit or the United States Supreme Court, and the Government is likewise  without any information to verify petitioner's claim in this regard.

**C.  Federal Habeas Corpus**

**Petitioner's Contentions (Dkt. Nos. 120 and 122)**

In his federal habeas corpus petition (Doc. No. 120) and memorandum of law in support (Dkt. No. 122), the petitioner raises multiple issues for relief, purportedly under two grounds. They have been reorganized here for the sake of clarity, because several of them are redundant and/or repetitious, while others contain multiple issues within the same ground:

**(1)** Ineffective assistance of counsel because:

    **(A)** trial counsel had a conflict of interest with petitioner because he:

     **(i)** failed to raise issues petitioner wanted raised and failed to pursue the course of action that petitioner requested;

    **(ii)** failed to subject the prosecution's case to a meaningful adversarial testing process;

    **(iii)** refused to conduct a defense on his behalf, amounting to abandonment;

    **(B)** Counsel waived petitioner's rights without his consent;

    **(C)** Counsel persuaded petitioner to plead guilty through coercion and threats;

    **(D)** Counsel failed to advocate for a reasonable sentence in view of the imposition of the career offender provision; and

**(2)** The Court improperly imposed an unlawful sentence because:

    **(A)** drug quantity was not established, thus an essential element of the offense was not proven;

    **(B)** petitioner's criminal history was not within the scope of purpose for career-offender category.

    **(C)** the Court improperly relied upon inaccurate facts to impose sentence.

## The Government's Response (Dkt. No. 127)

    **(1)** There was no ineffective assistance of counsel.

    (a) Petitioner's claim that counsel was ineffective for failing to raise issues that petitioner wanted raised is unfounded. Petitioner contends that he advised his counsel that his residence was unlawfully searched and that he asked counsel to obtain the lab report reflecting the "quantity and toxicology" of drugs seized from his residence but that his counsel failed to do so. Petitioner's

contentions regarding the unlawfulness of the search were addressed by his counsel in his August 14, 2006 motion to suppress, which petitioner later withdrew in exchange for the Government's agreement to his plea on Count Three, which carried a much lower maximum penalty than the counts that were dismissed in exchange for that plea.

Petitioner's § 2255 motion both complains that his counsel did not obtain the lab report for the marijuana analysis while simultaneously acknowledging that counsel did in fact obtain a WV State Police forensic lab report on the marijuana at issue. Petitioner implies that the lab report was inaccurate or that counsel was ineffective for failing to question the analysis results because the report[8] contained the type-written, and then crossed-out words "purchased cocaine," replaced by the hand-written words "seized marijuana." Petitioner's counsel had no reason to contest the report based on the corrected typo; since the penalties for marijuana are much less than those for cocaine, the correction only inured to petitioner's benefit. Moreover, in his plea agreement, petitioner stipulated to a total drug relevant conduct of at least forty but less than sixty kilograms of marijuana, and did not object to this stipulation at the plea hearing.

(b) Petitioner's claim that counsel failed to subject the prosecution's case to a meaningful adversarial testing process is unfounded. The record reflects that petitioner's counsel obtained the lab report on the marijuana analysis, and conducted a vigorous defense of petitioner, including filing a motion to suppress the drugs seized at petitioner's residence, which, as stated *supra*, he later withdrew in exchange for the Government's agreement to petitioner's plea on Count Three with its lesser maximum penalty. At the sentencing hearing, Counsel presented vigorous argument on petitioner's behalf on the issue of career offender status as well as on a motion for a variant sentence, negotiating the best outcome possible for petitioner under the circumstances. Further, petitioner himself advised the court at his Rule 11 hearing that he was satisfied with counsel's representation and that counsel had done all that he could to defend him.

(c) Petitioner's claim that counsel was ineffective when he waive petitioner's rights without his consent, thereby abandoning him, is without merit. Petitioner knowingly and validly waived his own rights at his Rule 11 hearing after he was questioned, in great detail, about his understanding of the all of the various rights he was waiving.

(d) Petitioner's claim that counsel failed to advocate for a reasonable sentence in view of the career offender status is unsupported by the record. Petitioner's counsel did address his probation

---

[8]The Government is echoing petitioner's own confusion here. The typographical error corrected by the hand-written words "seized marijuana," was not made in the W.V. State Police Forensic Laboratory Report, but rather, in the W.V. State Police Report of Investigation (both of which were attached as exhibits to petitioner's § 2255 motion). The actual W.V. State Police Forensic Laboratory Report clearly identifies the results of the analysis on the substance seized as "Marijuana, a schedule I controlled substance." The W.V. State Police Report of Investigation, on the other hand, merely summarizes the all of findings of the police investigation, *inter alia,* listing the exhibits obtained as a result of that investigation, one of which was "Exhibit 5," the W.V. State Police Forensic Laboratory Report on the marijuana seized and tested. It is there that the typographical error was committed, when "Exhibit #5" was described: "One Laboratory Report from the drug identification section for the analysis of the ~~purchased cocaine~~ –> *seized marijuna* [sic] [.]"

officer's determination of his career offender status and moved the court to impose a variant sentence because of the unusual circumstances of petitioner's prior manslaughter conviction, the basis for the career offender status. The Court, however, denied his motion for variance and sentenced petitioner as a career offender, but at the lower end of the Guidelines range. Further, sentencing issues generally cannot be raised on collateral review. Finally, petitioner already raised this issue on direct appeal and the Fourth Circuit affirmed his conviction and sentence. Petitioner bears the burden of proving the <u>Strickland</u> factors necessary to prove ineffective assistance of counsel and has failed to establish the prejudice prong of <u>Strickland</u>.

(2) The Court did not impose an unlawful sentence.

(a) Petitioner's claim that the Court erred by not establishing drug quantity, thereby leaving an essential element of the offense unproven, is without merit. In his plea agreement, petitioner stipulated to the amount of drugs that he was responsible for; once parties have stipulated to relevant conduct, they cannot later argue to change the amount. Further, at the plea hearing, petitioner's counsel advised the Court that he and petitioner had reviewed the plea agreement stipulation in detail together, and petitioner himself testified that he understood the terms of the plea agreement.

(b) Petitioner is mistaken in his claim that the Court erred in finding his criminal history category was not within the scope of career-offender category. In his plea agreement, petitioner stipulated to his status as a career offender under the U.S. Sentencing Guidelines, and at his plea hearing, he testified that he understood the U.S. Sentencing Guidelines and that the Court could impose a sentence greater or less than that recommended by those Guidelines. Petitioner also testified that he understood that the quantity of drugs would be determined later by the Court using a preponderance of evidence standard.

**<u>Petitioner's Reply (Dkt. No. 128)</u>**

In his reply, after briefly accusing the government of "misleading and misquoting the facts and circumstances relative to the issues," petitioner asserts his entitlement to an evidentiary hearing. His reply then expands, in a haphazard fashion, on the issues raised in his original petition, and includes a new issue. The claims are reorganized here for the sake of clarity:

(1) **Supplementing Original Issue 1(A), (I), (ii) and (iii)**: Petitioner reiterates his claim that his counsel failed to raise viable issues in his defense that petitioner wanted raised, thereby failing to subject the prosecution's case to a meaningful adversarial testing process.

(2) **Supplementing Original Issue 1(A), (I), (ii) and (iii):** Petitioner reiterates his claim that: the search warrant identified the 'wrong county,' stating that the "Government . . . does not disputes [sic]" this fact; and that counsel was ineffective for not investigating and/or challenging the search warrant, since the faulty information proved that the confidential informant's reliability was questionable, supporting petitioner's right to have all evidence seized pursuant to it suppressed. Petitioner for the first time alleges that this issue was not raised on direct appeal because his counsel was ineffective in omitting to do so.

**(3) Supplementing Original Issue 1(A)(ii)** Petitioner reiterates his claim that counsel was ineffective for failing to obtain "discoverable material" regarding "seized cocaine" instead of "marijuana"[9] and failing to challenge the search warrant for listing "the wrong county," because this "reports speculative doubt." Petitioner also claims counsel should have questioned the drug analysis lab report because: "twenty-six samples were gathered for toxicology testing, but the Governmetn [sic] failed to show what happened to the other twenty-five samples . . . The unaccountable absent [sic] of the other twenty-five samples created a negative void that those unrevealed samples were unproved to be marijuana." (Dkt. No. 128, n.5 at 7).

**(4) Supplementing Original Issue 1(A)(iii), 1(B), and 1(C):** Petitioner reiterates his claim that his counsel was ineffective for permitting him to enter into the plea agreement because he "waived without consent and consultation of his client [sic]," an "abandonment of the defense." Petitioner contends that his plea was coerced by counsel's "threatening correspondence," and therefore was not knowing and voluntary. Petitioner further claims that he was not aware that the plea agreement waived his right to appeal his "suppression hearing."

**(5) Supplementing Original Issue 1(D):** Petitioner again repeats his claim that his counsel was ineffective for failing to argue for a reasonable sentence in light of the "inapplicability of career offender" status to his situation.

**(6)** Petitioner alleges that the Government "does not dispute" certain issues in his 2255 motion in its response,[10] concluding that those issues are conceded.

## III. Analysis

### A. Petitioner's Burden of Proof

"A petitioner collaterally attacking his sentence or conviction bears the burden of proving his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the

---

[9] Petitioner incorrectly quotes the typographical error he previously complained of in the W.V. State Police Report of Investigation here; the report actually contained the type-written words "purchased cocaine," crossed out and replaced with the hand-written words "seized marijuna [sic]," not "seized cocaine."

[10] The Government's response did not actually address petitioner's "wrong county on the search warrant" issue. The Government's response also did not fully address petitioner's contention that his counsel had a conflict of interest or his claim that his plea was coerced by threats from counsel, although petitioner makes no comment on that. Petitioner contends that the Government does not dispute his IAC claim that counsel "failed to obtain discoverable material" with regard to the typographical error/purported uncertainty between cocaine vs. marijuana; his IAC claim that counsel should not have permitted him to enter into the plea agreement waiver of rights; and finally, that "all parties" do not dispute that Ohio's involuntary manslaughter statute requires no 'intentional availment of force." Each of these grounds will be addressed fully *infra*.

maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. A motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 WL 36859 *2 (E.D. Va. Jan. 4, 2006).

**B**. <u>**Ground One - Ineffective Assistance of Counsel**</u>

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that the petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." <u>Strickland</u> at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. <u>Id.</u> at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in <u>Strickland</u>, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Lockhart v. Fretwell</u>, 506 U.S. 364 (1993).

In addition, "a defendant who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." <u>Hill v. Lockhart</u>, 474 U.S. 52, 53-59 (1985). In the case of a guilty plea, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985) (footnote omitted); <u>Hooper v. Garraghty</u>, 845 F.2d 471, 475 (4th Cir. 1988). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Strickland</u> 466 U.S. at 694.

It is further noted that a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Strickland</u> 466 U.S. at 689-90.

Moreover, there are no absolute rules in determining what is reasonable performance. <u>See</u> <u>Hunt v. Nuth</u>, 57 F.3d 1327, 1332 (4th Cir. 1995) (counsel's representation is viewed on the facts of a particular case and at the time of counsel's conduct).

**1A. <u>Ineffective Assistance of Counsel</u>: Whether trial counsel had a conflict of interest with petitioner because he (i) failed to raise issues petitioner wanted raised, i.e., failed to pursue the course of action that petitioner requested; (ii) failed to subject the prosecution's case to a meaningful adversarial testing process; and (iii) refused to conduct a defense on petitioner's behalf, amounting to abandonment.**

"The Sixth Amendment guarantees an accused the right to effective assistance of counsel, and an essential aspect of this right is a lawyer 'unhindered by conflicts of interest.'" <u>See</u> <u>United States v. Nicholson</u>, 475 F.3d 241, 248 (4th Cir. 2007) (citing <u>Strickland v. Washington</u>, <u>supra</u> and quoting <u>Mickens v. Taylor</u>, 240 F.3d 348, 355 (4th Cir. 2001) (en banc), <i>aff'd</i>, 535 U.S. 162 (2002)). When a petitioner asserts an ineffective assistance of counsel claim based on a conflict of interest, the standard for such a claim is set forth in <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980). <u>Nicholson</u> at 249. "To establish a conflict of interest resulted in ineffective assistance, '[m]ore than a mere possibility of conflict must be shown.'" <u>Id.</u> (quoting <u>United States v. Tatum</u>, 943 F.2d 370, 375 (4th Cir. 1991)). Instead, the petitioner must show "(1) that his lawyer was under an actual conflict of interest, and (2) that this conflict adversely affected his lawyer's performance." <u>Id.</u> (citing <u>Cuyler v. Sullivan</u>, 446 U.S. at 348) (internal citations omitted).

To show an actual conflict of interest, the petitioner "must show that [his] interests diverged with respect to a material factual or legal issue or to a course of action." <u>Gilbert v. Moore</u>, 134 F.3d 642, 652 (4th Cir. 1998) (en banc) (internal quotations omitted). Alternately, a conflict of interest exists when counsel is regarded as "account[ing] to two masters" or when he fails to take action on behalf of one client because it would adversely affect another. <u>United States v. Tatum</u>, 943 F.2d at 376.

The petitioner's ineffective assistance of counsel conflict of interest grounds can be broken into pre- and post-plea claims.

1.      Pre-Suppression Hearing Conflict

In support of this ground, the petitioner asserts that counsel, "from the beginning of his involvement with the case" only advised him to plead guilty "though counsel had done no investigation." He cites the "illegal search" of the trailer where the marijuana was found and the validity of the search warrant identifying the "wrong county" as examples where "defense counsel accepted the government's version of the facts." (See Memorandum (Dkt. No. 122 at 8).

2.      Suppression Hearing Conflict

Petitioner claims that counsel's performance at his suppression of evidence hearing was deficient, and that because counsel failed to investigate and/or test the government's case, "no proof of actual drug quantity was established" and therefore, his sentence was imposed based on a "presumptive" drug amount. He asserts that these "omissions and errors" relieved the prosecution of its burden of proving that the plants seized in the "illegal search" actually were marijuana, and not, perhaps, "ordinary hemp." He claims that counsel did not present any witnesses, refused to "effectively cross-examine witnesses," did not challenge the chain of custody of evidence "in light of the altered State Police Report," and did not introduce any evidence in support of the motion to suppress. Although admitting that the Government's witness testified that twenty-six of the plants seized were sampled and analyzed, he claims that "documentary evidence" he received after sentencing showed that only one sample was tested, implying that the remaining plants were never proven to be marijuana at all. Further, he claims counsel failed to challenge the Government's witness' "erroneous assertions" and "known false testimony" regarding his "history of violent tendencies" and prior conviction for a "murder charge," and that those "false claims regarding

criminal history significantly affected the course and outcome of proceedings." (Dkt. No. 122 at 11-12).

3.     Post-Suppression, Prior to Plea Hearing Conflict

Petitioner alleges that counsel refused his request to challenge the § 851 enhancement based on the Information filed by the prosecutor regarding his prior convictions before he signed the plea agreement, stating he only signed the agreement because counsel "threatened . . . [him] to accept . . .[it] or a greater sentence would be imposed."  He claims that counsel's "admitted decision" not to pursue "a viable suppression [motion]" was "grossly incompetent"and was further proof of "abandonment," denial of due process and failure to test the prosecution's case.  Petitioner claims that once he signed the plea agreement, counsel "falsely represented . . . that by entering the plea agreement, he would avoid the career offender enhancement."  (Dkt. No 122 at 10).

4.  Post-plea Conflict

At the sentencing hearing, counsel "failed to make meaningful advocacy for a downward departure" in his sentence, again amounting to "abandonment."  He alleges that counsel failed to "acquire the pleading minutes, sentencing transcript, and/or copy of . . . Ohio's Involuntary Manslaughter Statute before concluding in support of the career offender application definition." (Dkt. No. 128 at 15),.  He claims, without clarification, that counsel "willfully misled" him, foreclosing alternatives that otherwise would have been available to him.

Here, the undersigned can find no actual conflict of interest regarding any of petitioner's pre- or post-plea conflict of interest claims, let alone any evidence that counsel's performance fell below an objective standard of reasonableness.

Petitioner's claim  that counsel failed to perform his own investigation, and instead merely accepted the government's version of drug quantity without attempting to verify it is belied by a

cursory review of the record. Petitioner himself, apparently after lengthy discussion about the merits

of it with counsel before doing so, stipulated as to drug amount because it was in his best interest

to do so:

THE COURT: The plea agreement does contain a stipulation on relevant drug conduct of more than
forty kilograms and fewer than sixty kilograms of marijuana, I think. I'll look at it again. . . .

THE COURT: Yes. It's at least forty kilograms but less than sixty kilograms of marijuana. That's
agreed to. Is that right, Mr. Kornbrath?

MR. KORNBRATH: Your Honor, I spoke to Mr. MacWilliams in detail about that stipulation. He's
not contesting it mainly because that amount of drugs would be far less than the mandatory
minimum sentence in this case and he's also regrettably we believe facing career offender status so
he understands what this stipulation says and he's abiding by it.

THE COURT: . . . Mr. MacWilliams, do you understand and agree with the terms contained in the
plea agreement?

THE DEFENDANT: Yes, sir.

THE COURT: Has anything further been agreed to, either orally or in writing, that is not contained
in the plea agreement?

THE DEFENDANT: No, sir.

Dkt. No. 90 at 13 - 14.

Despite petitioner's strenuous allegations regarding counsel's "acceptance of the

Government's version of the facts" by failing to contest the legality of the search, a review of the

record reveals that counsel did indeed vigorously contest the search's legality, although on a more

much more substantive basis than that "the wrong county" was identified in the search warrant.[11]

---

[11] Petitioner is still attempting to prevail on his motion to suppress, by deeming the search warrant so
defective that all evidence seized pursuant to it should be excluded as the "fruit of the poisonous tree." Petitioner is
mistaken; the search warrant did not identify the wrong county. Petitioner is referring to arresting officer Tpr.
Smith's affidavit in support of the search warrant, not the search warrant itself. Tpr. Smith's affidavit recounts the
information he originally received on May 2, 2006 from the Tag Law Enforcement Task Force officer from
Ashtabula County, Ohio, who spoke to the confidential informant regarding petitioner's pre-arrest whereabouts: that
petitioner was staying "within an area near Burnsville WV . . . [in] . . . a trailer located on a road known as Hoot Owl
Hollow, believed to have been located within Braxton County." The affidavit goes on to say that Smith then verified

On August 14, 2006, counsel filed 4-page August 14, 2006 motion to suppress (Dkt. No. 26),

followed by a 5-page Memorandum of Law in Support on August 31, 2006 (Dkt. No. 42). A motion

hearing on the matter was held before the undersigned on September 5, 2006, where the record

reflects that two witnesses testified, Tpr. John W. Smith for the government, and Sharron Calis, an

investigator for the Federal Public Defender, on behalf of petitioner. Vigorous argument was heard

from the parties as to whether the protective sweep of the two trailers was justified, and whether

there was an independent basis for the search warrant issued by the Circuit Court Judge. Three days

later, a Report and Recommendation was issued by the undersigned, denying petitioner's motion to

suppress. (Dkt. No. 49). Petitioner's counsel prepared and filed a 12-page objection to that Report

and Recommendation on September 15, 2006 (Dkt. No. 51). Three days later, on September 18,

2006, petitioner signed his plea agreement.

Petitioner chose not to pursue his Motion to Suppress in exchange for the Government's

agreement to his plea on Count Three, which carried a much lower maximum penalty than the

counts that were dismissed in exchange for that plea.[12]   At his September 29, 2006 plea hearing,

petitioner specifically testified that he voluntarily agreed with the decision to forgo his right to

pursue the suppression motion in exchange for the government's offer of the plea. (Dkt. No. 90 at

---

the information received by traveling to the area himself on May 4, 2006, learning that Hoot Owl Hollow is actually
in Gilmer County, WV. He then aerially surveyed the area the next day, confirming the validity of the informant's
description of the location of the two trailers and the types of vehicle the defendants were driving. The search
warrant was issued on May 7, 2006, after the correct county had already been identified. Burnsville WV, although
located in Braxton County, is on the Gilmer/Braxton county line, so the informant's uncertainty as to which county it
was in is understandable. It is apparent that petitioner's counsel chose not to pursue this line of attack against the
search warrant because it was a non-issue, would not benefit petitioner in any way and would have wasted the
Court's time. Similarly, it explains why counsel chose not to raise this issue on direct appeal. Apparently the 4th
Circuit Court of Appeals agreed: "we have reviewed the entire record in this case and have found no meritorious
issues for appeal." United States v. MacWilliams, No. 07-4253, (4th Cir., January 10, 2008) *(per curiam).*

[12] Had he not pled to Count 3, he would have faced exposure to a potential Guideline sentence range of 188
- 235 months, far more time than the 151 month sentence he received by virtue of the plea. (Dkt. No. 89 at 10).

25).  Petitioner's disingenuous claim now that he "did not understand" he was giving up his suppression motion when he pled is merely an attempt to cherry-pick the benefits gained by the plea agreement while escaping its costs.  Presumably petitioner believes that this proves that counsel's interests diverged with his with respect to a material factual or legal issue or to a course of action, and he has therefore shown a conflict of interest.  However, the record supports no such interpretation.  Rather, it is evidence of counsel's zealous advocacy for the best deal possible for petitioner under the circumstances.  This claim lacks merit and should be dismissed.

Petitioner asserts that counsel refused to obtain forensic proof that the substance seized was proven to be marijuana, suggesting that counsel failed to obtain "discoverable material" regarding "seized cocaine."  However, petitioner simultaneously admits that counsel did obtain a "lab submission form,"a W.V. State Police Forensic Laboratory Report (hereinafter "Lab Report").[13] The Lab Report reveals that analysis was performed on "Item #1.1," a manila envelope of plant samples collected on May 7, 2006, using "standard analysis protocol," revealing that the material was "Marihuana, a schedule I controlled substance."  Petitioner impugns the report's validity, contending it is suspect because it contains a typographical error, crossed-out and corrected by the hand-written words "seized marijuna [sic],"claiming that counsel should have challenged the chain of custody of evidence "in light of the altered State Police Report."

The typographical error petitioner complains of is not within the Lab Report itself, but in a later-created document that merely referred to it, *inter alia*, among a list of exhibits, prepared by Tpr. Smith, the investigating/arresting officer. This document, W.V. State Police Report of

---

[13] This Lab Report is attached as Exhibit A to his Memorandum of Law in Support of Motion Pursuant to § 2255.

Investigation, attached as Exh. D to petitioner's Memorandum of Law,[14] is not 'evidence,' but a summary of the details of the investigation and a list of exhibits obtained as a result. Petitioner's claim that the *lab report* was inaccurate and therefore suspect, and/or that counsel was ineffective for failing to question the analysis finding of marijuana or the evidentiary chain of custody because the *report of the investigation* contained the type-written, and then crossed-out words "purchased cocaine," replaced by the hand-written words "seized marijuana" is disingenuous, lacks merit and should be denied.

Petitioner's next claim, that the Lab Report is suspect because it only identifies what was in one of twenty-six samples is likewise without merit. The Lab Report clearly says that "plant *samples"* (emphasis added) were analyzed, indicating that multiple samples were analyzed, not that only one out of twenty-six samples was analyzed, as petitioner now attempts to allege. Petitioner's own § 2255 motion admits that "[t]he government's witness testified that 26 samples were tested," (Dkt. No. 122 at 9). Tpr. Smith's plea hearing testimony was that two hundred and sixty marijuana plants' root balls were sampled and submitted to the lab, where testing confirmed that they were, in fact, marijuana (Dkt. No. 90 at 22 - 23). Petitioner had the opportunity to object to Smith's testimony after Smith finished testifying but declined to do so. (Dkt. No. 90 at 24). It is patently obvious why counsel did not choose to pursue this ludicrous line of attack. Counsel's failure to file a meritless motion does not constitute ineffective assistance of counsel. United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994); Almon v. United States, 302 F.Supp.2d 575, 586 (D.S.C. 2004).

Moreover, petitioner could have raised his various claims regarding the disputed lab report on appeal and chose not to do so. "[A] final judgment commands respect. For this reason, we have

---

[14] Only the first three pages of the nine-page document were attached by petitioner.

long and consistently affirmed that a collateral challenge may not do service for an appeal." <u>United States v. Frady</u>, 456 U.S. 152, 165 (1982). Therefore, the failure to raise a claim on direct appeal may result in a procedural default barring collateral review. <u>Bousley v. United States</u>, 523 U.S. 614 (1998).

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-493 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." <u>Id.</u> Actual prejudice is then shown by demonstrating that the error worked to petitioners' "actual and substantial disadvantage," rather than just creating a possibility of prejudice. <u>See</u> <u>Satcher v. Pruett</u>, 126 F.3d 561, 572 (4th Cir. 1997) (quoting <u>Murray v. Carrier</u>, 477 U.S. 478, 494 (1986)).

"In order to demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack, a movant must show actual innocence by clear and convincing evidence." <u>Mikalajunas</u>, 186 F.3d at 493. "Typically, to establish actual innocence, a petitioner must demonstrate actual factual innocence of the offense of conviction, i.e., that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." <u>Id.</u> at 494. The petitioner must show that "it is more likely than not that no reasonable juror would have convicted him." <u>Schlup v. Delo</u>, 513 U.S. 298 (1995).

Here, petitioner has shown no cause for not pursuing this claim on appeal. Clearly it is not "newly-discovered evidence," excusing him from not raising it earlier. Nor has he shown he was

prejudiced by counsel's failure to pursue these non-meritorious claims. Therefore, this claim lacks merit, is procedurally defaulted, and should be denied.

Petitioner's next claims are that counsel: 1) refused to call witnesses on his behalf at the suppression hearing;[15] 2) did not seek to examine the forensic technician who performed the toxicology testing on the marijuana; and 3) did not challenge "known false testimony" by the government's witness regarding his past criminal history.

Petitioner's allegation regarding counsel's failure to call any witnesses on his behalf at the suppression hearing is unsupported by the record. A witness for the Federal Public Defender did appear on his behalf, testifying as to her investigation of the area incident to the arrest, various distances in question and measurements taken. As to what any of the officers or others at the scene of the challenged search, had they been called, might have proffered in his defense, petitioner has not provided any affidavits, declarations or other evidence to suggest, let alone support what their testimony might have been. As such, this is an unsupported allegation; it is insufficiently pled and/or lacks merit. Petitioner has failed to show by a preponderance of evidence that he is entitled to relief and this claim should be denied.

Petitioner's claim that counsel was ineffective for not seeking to examine the forensic technician is a non-issue; counsel is not required to investigate claims that have no substance. The forensic analysis clearly revealed that the samples tested were marijuana. Further, the issue of examining the forensic technician was mooted by petitioner's subsequent plea agreement stipulating that the substance in question was indeed marijuana. Petitioner acknowledged at his plea hearing that he understood that he was giving up the right to have the drug substance proven by controverted

---

[15]Without elaborating on what they might have testified as to, petitioner states that counsel failed to call any of the other officers or others who were present at the scene of the challenged search.

evidence at trial:

THE COURT: Do you understand in a drug case you have the right to have the quantity of drugs proven beyond a reasonable doubt?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand you have a right to a unanimous verdict?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand there will be no trial, no jury verdict, no findings of guilt by controverted evidence presented to a jury or judge?

THE DEFENDANT: Yes, sir.

MR. KORNBRATH: Judge, could we have a minute?

THE COURT: You may.

*(Pause - Counsel conferring with defendant)*

MR. KORNBRATH: Judge, you mentioned proving drugs beyond a reasonable doubt, I wanted to make sure he understood that applied to the substance itself and not to the quantity.

THE COURT: Okay. Does he understand that?

MR. KORNBRATH: Right. That would be a Guideline issue and the Judge would use a preponderance of the evidence standard.

THE COURT: Do you understand that, Mr. MacWilliams?

THE DEFENDANT: Yes, Sir.

(Dkt. No. 90 at 19 - 20).

As the 4th Circuit previously ruled, factual stipulations have a "special nature," as they are

agreed to and signed by a defendant, his attorney, and the prosecutor. Such a stipulation is more potent than simply an admission. By so stipulating, a defendant waives the requirement that the government produce evidence (other than the stipulation itself) to establish the facts stipulated to beyond a reasonable doubt." See United States v. Clark, 993 F.2d 402, 406 (4th Cir. 1993).

United States v. Muse, 83 F.3d 672, 678 (4th Cir. 1996).

Petitioner contends that counsel failed to challenge "known false testimony" by the government's witness Tpr. Smith at the suppression hearing regarding his past criminal history. Petitioner himself, when given the opportunity by the Court to make any corrections or additions when Smith finished testifying, declined to do so. (Dkt. No. 90 at 24). Had there been any real disagreement with the representations regarding his past criminal history, clearly petitioner would have raised those issues then.

Presumably, petitioner's contentions regarding his counsel's conflict of interest rest on the allegation that counsel's interests diverged with respect to his on a material factual or legal issue or on a particular course of action, since he has made no allegation that he regarded counsel as "accounting to two masters," or that counsel failed to take action on his behalf because it would adversely affect another client. Here, petitioner has failed to show that counsel's interests diverged with his with respect to any material factual or legal issue, or any realistic course of action. None of his allegations regarding counsel's omissions or failures are supported by the record or have any merit. It is counsel's role to advise his client on the best course of action under the circumstances. Each instance petitioner cites in support of his conflict of interest claim only shows counsel's effective advocacy and good lawyering on genuinely substantive issues, not ineffectiveness or refusal to act in petitioner's best interest. It is an attorney's job to identify the relevant, critical issues in his client's case, and pursue a course of action accordingly. Counsel has no obligation to make meritless arguments. It is apparent from the record that counsel believed that the plea agreement was petitioner's best option and that he had counseled petitioner on the respective merits of his admittedly very limited options before the plea. Counsel was required to advise petitioner accordingly and he did so. Petitioner has presented no proof that counsel abandoned his duty of loyalty to his client. Even assuming, *arguendo,* that counsel's performance was unreasonable,

nowhere does petitioner allege that but for counsel's errors, he would have chosen to go to trial, face the possibility of conviction on all counts with exposure to a potential maximum sentence of almost twenty years, compared to the approximately twelve and a half year sentence he received. Petitioner's conflict of interest claims of ineffective assistance are unsupported, lack merit and should be denied.

**1(B) <u>Ineffective Assistance of Counsel</u>: Whether counsel waived petitioner's rights without his consent**.

Petitioner contends that his rights were waived without his consent when counsel chose not to pursue a 'viable suppression motion" and that he was not aware that the plea agreement waived his right to appeal his "suppression hearing."  This claim is unsupported by the record:

THE COURT: Has Mr. Kornbrath fully, adequately represented you in this matter?

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Kornbrath left anything undone which you think should have been done in defending you against these charges?

THE DEFENDANT: No, sir.

THE COURT: Do you know of any defense to these charges to which you plead guilty, Count Three?

MR. KORNBRATH: We filed a viable suppression motion but in exchange for not pursuing that the Government offered a plea to Count Three versus Counts One and Two which carried more time, so that's the only issue that we could see in this case.

THE COURT: Did you voluntarily agree to that agreement, Mr. MacWilliams?

THE DEFENDANT: Yes, sir.

THE COURT: And other than that motion to suppress, which you - - which the defendant forewent, are there any other defenses to these charges?

MR. KORNBRATH: No, Your Honor, not that I could find.

Dkt. No. 90 at 25 - 26.

"Representations of defendant, his lawyer, and prosecutor at plea hearing with respect to lack of promises influencing guilty plea constitute a formidable barrier in any subsequent collateral proceedings, since strong solemn declarations in open court carry a strong presumption of verity, and subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal." Blackledge v. Allison, 431 U.S. 63, 73-74 (1974). Therefore, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Maryland, 956 F.2d 1290, 1299 (4th Cir. 1992), cert. denied, 506 U.S. 885 (1992).

At the plea hearing, the petitioner stated that there were no agreements, verbal or otherwise, outside of the written plea agreement. It was not until after he was sentenced, and decided he was unhappy with his sentence, that he asserted he was persuaded by outside threats and coercion to take the plea with its waiver of rights. Petitioner has not offered "clear and convincing evidence" which would call into question his statements made under oath during the plea colloquy. Nor has he provided sufficient evidence that any outside threats occurred. See Sutton v. United States, *supra* (petitioner must establish grounds by a preponderance of the evidence).[16] Accordingly, this claim should be denied.

**1(C) <u>Ineffective Assistance of Counsel</u>: Whether counsel persuaded petitioner's plea by coercion and threats.**

Petitioner's claim that his plea was coerced, rather than knowing and voluntary, has no support in the record. Further, petitioner already raised this issue on direct appeal and the Fourth

---

[16] The petitioner's only "evidence" of coercion is his self-serving and conclusory allegations; the January 19, 2007 letter from counsel attached as Exh. C to his memorandum in support of his § 2255 motion provides no such proof. It merely shows that counsel explained his various (albeit limited) options. Counsel was presenting reality, not making threats.

Circuit held that his plea, as well as his waiver of rights, was knowing and voluntary. "It is well settled that issues previously rejected on direct appeal may not be raised in a collateral attack." Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976). Because a federal court is not required to second-guess itself, a claim decided on direct review cannot ordinarily be relitigated in a § 2255 proceeding unless the petitioner can show an intervening change in the law. Davis v. United States, 417 U.S. 333 (1974); Boeckenhaupt v. United States, 537 F. 2d 1182 (4th Cir. 1976). Petitioner asserts no intervening change in the law that would require the Court to reconsider these issues under a § 2255 motion. Therefore, this claim should be denied.

**1 (D) <u>Ineffective Assistance of Counsel</u>: Whether counsel failed to advocate for a reasonable sentence in view of the imposition of the career offender provision.**

Petitioner argues that his criminal history does not meet the definition of a career offender and that counsel was ineffective in failing to advocate for a reasonable sentence and/or for permitting him to be sentenced accordingly. Ignoring for the moment that petitioner himself stipulated to the fact that he was a career offender, among counsel's alleged purported omissions in this regard were: failure to acquire the minutes of the plea hearing; failure to obtain a copy of the Ohio involuntary manslaughter statute;[17] and failure to make a good-faith effort to discover the facts relevant to his sentencing. The issues regarding petitioner's "career offender" status and improper calculation of his sentence have already been raised on direct appeal; the sentencing claims were foreclosed by his validly entered plea with its waiver provision, found to be knowing and voluntary. Although the same issue is being re-framed here as an ineffective assistance of counsel claim, in

---

[17] Petitioner also alleges that counsel failed to obtain a copy of the sentencing transcript "before concluding in support of the career offender application definition[.]" Presumably petitioner is confused in this regard, as the sentencing transcript would have been created after, not before, the imposition of the career offender status and sentencing. Accordingly, this claim will be disregarded as it is a logical impossibility.

order to leave no stone unturned, it will be fully addressed.

In the plea agreement, Petitioner stipulated that his relevant conduct was at least 40 kilograms, but less than 60 kilograms of marijuana, and that he was a career offender pursuant to §4B1.1(a). (Dkt. 59 at 3). The United States Sentencing Guidelines provide for a Level 20 for this range of marijuana. USSG § 2D.1(c)(10). With the Chapter 4 enhancement for prior felony convictions under § 4B1.1, his Guideline level went from twenty to thirty-two (a twelve-level increase), but granting him a total of a three level reduction for acceptance of responsibility, he was sentenced based on a Total Offense Level of 29. Thus, Petitioner was correctly sentenced according to the stipulated amount of relevant conduct contained in the plea agreement.[18] Although there was no reason for counsel to object, counsel did in fact present vigorous argument for a variant sentence on petitioner's behalf.

As for petitioner's argument now that he does not meet the definition of a career offender.

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense . . . (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has had at least two prior convictions of either a crime of violence or a controlled substance offense.

U.S. Sentencing Guideline § 4B1.1(a).

Without offering any explanation, petitioner "disputes subsection three of § 4B1.1 - - that he has two prior convictions."[19] (Dkt. 128 at 10). He also vigorously objects to his prior Ohio involuntary manslaughter conviction being used as a predicate offense to enhance his criminal

---

[18] This fact was affirmed on appeal when the Fourth Circuit found that Petitioner's sentence was properly calculated based upon his adjusted offense level.

[19] Petitioner's prior convictions are addressed on page 5 of this R&R. Since he has provided no proof, affidavit or further argument on this point, it is insufficiently pled and will be disregarded.

history to career offender status.  His reliance on cases from other jurisdictions as support for his position that  his prior Ohio involuntary manslaughter conviction was not a 'crime of violence' is misplaced:  <u>Bejarano-Urrutia v. Gonzales</u>, 413 F.3d 444 (4th Cir. 2005) (vehicular homicide as a result of driving while intoxicated (DUI)); <u>Leocal v. Ashcroft</u>, 543 U.S. 1; 125 S.Ct. 377 (2004) (conviction for DUI causing serious bodily injury); <u>Oyebanji v. Gonzales</u>, 418 F.3d 260 (3rd Circ. 2005)(vehicular homicide).   Petitioner's prior Ohio involuntary manslaughter conviction, as the Court noted, "involved a gun, and involved drugs," (Dkt. No. 89 at 14).  It was not a vehicular homicide nor was it a DUI causing serious injury or death, which, in many jurisdictions, do not have a  *mens rea* component or only require a showing of negligence in operating a vehicle.  Such offenses do not meet the 'crime of violence' definition of the U.S. Sentencing Guidelines:

> The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that  has as an element *the use*, attempted use, or threatened use *of physical force against the person or another, or . . . otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S. Sentencing Guidelines §4B.1.2(a)(1). *(emphasis added).*    Application Note 2 of the Commentary to section 4B1.2 states: "'Crime of violence' includes murder, manslaughter[.]"

As petitioner's counsel accurately informed him,  <u>United States v. Sanders</u>, 97 F.3d 856 (6th Cir. 1996) *(rev'd on other grounds)* <u>Sanders v. United States</u>, 1999 U.S. App. Lexis 17975 (1999) *(involuntary manslaughter is a 'crime of violence' for purposes of U.S.S.G. §4B1.2(1) and 18 U.S.C.S. §924(c))* correctly states the law applicable to his Ohio involuntary manslaughter conviction: only deaths that are the "proximate result" of unlawful conduct can result in a conviction under Ohio Rev. Code Ann. § 2903.04; "intent" has nothing to do with it.  "Proximate result" as used in Ohio's involuntary manslaughter statute R.C. § 2903.04,  "mandates that a person will be criminally responsible for causing the death of another only where the consequences of his conduct

are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience."

Sanders, *quoting* State v. Sabatine, 64 Ohio App. 3d 556, 582 N.E.2d 34, 37 (Ohio Ct. App. 1989).

As the United States Supreme Court, quoting the noted jurist Williams Blackstone, opined in Dean v. United States, 129 S.Ct. 1849, 1855; 173 L.Ed. 2d 785 (2009):

> [I]f any accidental mischief happens to follow from the performance of a *lawful* act, the party stands excused from all guilt: but if a man be doing any thing *unlawful*, and a consequence ensues which he did not foresee or intend, as the death of a man or the like, his want of foresight shall be no excuse; for, being guilty of one offence, in doing antecedently what is in itself unlawful, he is criminally guilty of whatever consequences may follow the first misbehaviour.

W. Blackstone, Commentaries on the Laws of England 26 - 27 (1769).

Petitioner's claim that his counsel failed to advocate for a reasonable sentence in view of the imposition of career offender status is unsupported by the record. Clearly counsel *was* familiar with the Ohio involuntary manslaughter statute and despite petitioner's claims to the contrary, did provide a copy of it to petitioner.[20] Further, counsel filed a Memorandum in Aid of Sentencing (Dkt. No. 77) on February 9, 2007 and an objection to the Pre-Sentence Report (PSR) probation officer's conclusion that there were no mitigating circumstances in the prior involuntary manslaughter conviction. Counsel then filed a motion for variance which he argued vigorously on petitioner's behalf at the sentencing hearing a week later (Dkt. No. 89). Despite counsel's able and vigorous argument, the Court noted that

> the request for a variance from the career offender status, frankly, rings somewhat hollow, because Mr. MacWilliams is a recidivist. He is someone who was here as a fugitive, making a living, growing and selling marijuana . . . yes, his first conviction was an old conviction. It was a tragic set of circumstances but it involved a gun, and involved drugs, and while the element of intent may not have been required for the conviction, it nevertheless was a conviction because of a death, and

---

[20] Ohio Rev. Code Ann. § 2903.04 is quoted in the Sanders case, enclosed in counsel's January 19, 2007 letter to petitioner, which petitioner attached as Exh. C to his Memorandum of Law in support of his § 2255 motion.

yes, it's old, but it's still countable under the Guidelines.

> He falls squarely within what the Guidelines consider to be a career offender, and I find that the weight of what happened in the second offense, and the seriousness of this offense, far out weigh any argument regarding the age of the first offense or the fact that that offense did not include an element of intent in connection with the gun and the death.

(Dkt. No. 89 at 14 - 15).

The Court denied petitioner's motion for variance and sentenced petitioner as a career offender, but at the lowest possible end of the Guidelines range. It is noteworthy that, after the Court made its tentative findings as to petitioner's criminal history and total offense level, but before counsel presented his arguments for variant sentencing, petitioner made no objection to the Court's tentative findings and declined his right of allocution, when offered the opportunity to make a statement to the Court about any aspect of the case or issue related to sentencing. (Dkt. No. 89 at 6 - 7). Nor did he choose to object, once the Court imposed its sentence. (Dkt. No. 89 at 16 - 17). Only now does he claim his counsel failed to advocate vigorously on his behalf. This claim is unsupported by the record and should be denied.

Finally, petitioner's claim that defense counsel "wilfully misled" him with false representations *after* he signed the plea agreement, that by entering the plea he would avoid the career offender enhancement, is quickly dispatched by petitioner himself, via the January 19, 2007 letter from counsel, attached as Exhibit C to the memorandum in support of his § 2255 motion:

> Regardless of the presence of the career offender stipulation in the plea agreement, the United States Probation Officer who prepared the report made an independent determination that you were a career offender. See Paragraph 42 of the pre-sentence report. This finding had to be made because you met all the requirements for being a career offender.

> I have no legal or factual basis to argue your involuntary manslaughter conviction from Ohio is not a crime of violence. In <u>United States v. Sanders</u>, 97 F.3d 856 (6th Cir. 1996) the Court ruled that the very same statute that you were convicted of is a

crime of violence.  There is no case that I know of holding otherwise. I have enclosed a copy of <u>Sanders</u>[21] . . .

In addition, your complicity to traffic in marijuana conviction, in violation of Ohio Code § 2925.03, is a "controlled substance offense," as that term is defined in the guidelines. . . As a result, I have no legal or factual basis to argue this conviction fails as a career offender conviction predicate.

I understand you disagree with the entire concept of career offender status. However, I see no argument around it.  I will be arguing to the district court that the career offender status overstates the seriousness of the case against you, and the court should not utilize the guideline range called for by career offender status.

Dkt. No. 122, Exh. C.

Counsel's letter explains the applicable law, presents reality regarding petitioner's limited options based on his past criminal history, and identifies the arguments planned for the sentencing hearing; it makes no "false representations."  Counsel made the arguments planned on petitioner's behalf, arguments that petitioner wanted; counsel's performance is not ineffective assistance merely because the Court declined to accept those arguments.  An analysis of a claim of ineffective assistance of counsel "focusing solely on mere outcome determination, without attention to whether the results of the proceeding was fundamentally  unfair or unreliable, is defective. <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 369 (1993).    Petitioner has failed to meet his burden of proving the <u>Strickland</u> factor of deficient performance; without such a showing, it goes without saying he cannot claim that his defense was prejudiced.    As the record clearly demonstrates, petitioner's history of serious crimes and his own recidivism earned him the sentence that he received.  This ground lacks merit and should be denied.

## C.  <u>Ground Two - The Court Improperly Imposed an Unlawful Sentence</u>

---

[21] Petitioner's involuntary manslaughter conviction was an Ohio conviction, therefore the Sixth Circuit Court of Appeals' decision in <u>Sanders</u> is controlling.

**(A) Drug quantity was not established, thus an essential element of the offense was unproven.**

Petitioner's claim that the Court erred by imposing an unlawful sentence based on an unproven "presumptive" drug quantity is without merit. Inexplicably, in support of this ground, petitioner's own memorandum of law admits that there was evidence: "videos of marijuana plants . . .[and] agent testimony as to plants seized," (Dkt. No. 122 at 13 - 14). Ample evidence was presented at his plea hearing that petitioner was cultivating 260 marijuana plants in a trailer on his property, that the plants were sampled and submitted for forensic analysis and were confirmed to be marijuana. (Dkt. No. 90 at 22). Petitioner's insinuation that only one of twenty-six samples of the plants seized was shown to be marijuana has already been dispensed with *supra*. As well, as has already been addressed *supra,* petitioner stipulated to the amount of drugs that he was responsible for because it was in his best interest to do so. Petitioner was present, in person, at the plea hearing where this stipulation and the rationale for entering into it was discussed, and testified that he understood the stipulation and had reviewed it in detail together with counsel. (Dkt. No. 90 at 13 - 14). Petitioner also testified that he understood that the quantity of drugs would be determined later by the Court using a preponderance of evidence standard. This claim lacks merit and should be denied.

**(B). Petitioner's criminal history was not within the scope of purpose for career-offender category.**

Petitioner stipulated to his own status as a career offender under the U.S. Sentencing Guidelines to gain the benefit offered by the plea agreement. At his plea hearing, he testified that he understood the U.S. Sentencing Guidelines and that the Court could impose a sentence greater or less than that recommended by those Guidelines. Further, petitioner already raised the issue of

whether the Court improperly calculated his sentence, including the application of the career offender guideline, on direct appeal. The Fourth Circuit held that his sentencing claims were foreclosed by his validly entered plea and its waiver provision, and, finding that both were knowing and voluntary, dismissed his appeal. Because a federal court is not required to second-guess itself, a claim decided on direct review cannot ordinarily be relitigated in a § 2255 proceeding unless the petitioner can show an intervening change in the law. <u>Davis v. United States</u>, 417 U.S. 333 (1974); <u>Boeckenhaupt v. United States</u>, 537 F. 2d 1182 (4th Cir. 1976). Petitioner has asserted no intervening change in the law that would require the Court to reconsider this ground under a § 2255 motion. This claim is procedurally barred and is denied.

**(C) Whether the Court improperly relied upon inaccurate facts to impose sentence.**

Petitioner's claims that the Court improperly relied on inaccurate facts , i.e.: the "wrong county" identified in the search warrant; the 'discrepancies' in the evidence because of the typographical error regarding cocaine vs. marijuana in the police officer's investigative report; the "unproven" drug substance and quantity; and his unsuitability for career offender status determination because of the "false claims regarding criminal history" have already been analyzed and dispensed with *supra,* as lacking merit and should be denied.

**<u>The Government's Alleged Failure to Properly Respond to the Petition</u>**

In his reply, the petitioner asserts that the respondent either did not either address all of his claims, or that it did not dispute them, implying that it conceded some of them, and that since the Government did not "deny the validity of the issues raised therein," he is entitled to an order granting all claim asserted in is §2255 motion, or in the alternative, an evidentiary hearing to resolve factual disputes.

Rule 5(b) of the Rules Governing Section 2255 Proceedings states:

> The answer must address the allegations in the motion. In addition, it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing.

It is quite clear that Rule 5(b) does not require the respondent to respond to each and every separate claim individually. In a case such as this one, where the petitioner has filed numerous claims, largely based on the same factual premise, it is not uncommon nor unreasonable for the respondent to group certain claims together, or rely on the argument in one claim, as a basis for dismissal of another similar claim.[22] A review of the respondent's response shows that the respondent has in fact appropriately answered the allegations made in the petitioner's motion and that none of the grounds have been conceded.

## IV. <u>Recommendation</u>

For the reasons set forth in this opinion, the undersigned recommends that the Court enter an Order **DENYING** the petitioner's § 2255 motion and **DISMISSING** this case with prejudice.

Within ten (10) days after being served with a copy of this Recommendation, any party shall file with the Clerk of the Court written objections identifying those portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections shall also be submitted to the United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140

---

[22] Claims made by *pro se* parties are not always easily discernable from the pleadings, as is particularly obvious from a review of the record here. Holding the respondent to a strict requirement to answer each and every claim individually and separately is not only burdensome, but impractical. Quite often, it is not until after a response is filed, that a *pro se* party is able to clarify the exact basis for each of his or her claims. Just as the Court is required to liberally construe a *pro se* plaintiffs pleadings in the interests of fairness, the Court should likewise give some leeway to the respondent's interpretation of those same pleadings.

(1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied,</u> 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket. The Clerk is further directed to provide copies of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: October 2, 2009.

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE