IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


THOMAS J. MacWILLIAMS,

             Petitioner,

v.                                    Civil No. 1:08cv126
                                      Criminal No. 1:06cr59-1
                                      (Judge Keeley)


UNITED STATES OF AMERICA,

             Respondent.

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8[1]),
       DENYING § 2255 MOTION (DKT. NO. 1) AND
             DISMISSING CASE WITH PREJUDICE

I. INTRODUCTION

Pending before the Court is the Report and Recommendation ("R&R")(dkt. no. 8) of United States Magistrate Judge John S. Kaull recommending that the petition pursuant to § 2255 of the pro se petitioner, Thomas J. MacWilliams ("MacWilliams"), be denied. MacWilliams filed objections to the R&R (dkt. no. 14) on November 18, 2009. For the reasons that follow, the Court **ADOPTS** the R&R, **DENIES** MacWilliams's § 2255 motion, and **DISMISSES** the case **WITH PREJUDICE.**

II. PROCEDURAL HISTORY

On September 29, 2006, MacWilliams pled guilty to using and maintaining a drug-involved premises in violation of 21 U.S.C.

----

[1] Except where otherwise noted, citations in this order are to the docket of MacWilliams's civil filing, Civ. Action No. 1:08cv126.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

§ 856(a)(1) and 18 U.S.C. § 2. As a result of his plea, the Court
sentenced MacWilliams to 151 months of imprisonment with credit for
time served.

On June 23, 2008, MacWilliams filed a "Motion Under 28 U.S.C.
§ 2255 to Vacate, Set Aside or Correct Sentence by a Person in
Federal Custody," (dkt. no. 1) and a "Memorandum of Law in Support
of Motion Pursuant to 28 U.S.C. § 2255" (dkt. no. 2). In his
motion, MacWilliams claims the Court imposed an unlawful sentence
following his conviction because

1.  the "drug quantity was not established, thus
    failing to prove an essential element of the
    offense;" and

2.  the "accused's criminal history was not within the
    scope of the purpose of the career-offender
    category."

Id. at 6. Additionally, MacWilliams asserts that he received
ineffective assistance from his court-appointed attorney, Federal
Public Defender Brian J. Kornbrath ("Kornbrath"), because Kornbrath

1.  had a conflict of interest with MacWilliams because
    he refused to raise issues and pursue the course of
    action requested by MacWilliams;

2.  failed to subject the prosecution's case to a
    meaningful adversarial testing process;

3.  waived MacWilliams's rights without his consent and
    refused to conduct a defense, amounting to
    abandonment; and

2

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

> 4.   failed to advocate for a reasonable sentence in view of imposition of the career offender provision.

(Dkt. no. 1 at 5). MacWilliams requests relief in the form of a sentence reduction. Id.

In accordance with Local Rule of Prisoner Litigation 83.15 and Local Standing Order No. 2, Magistrate Judge Kaull conducted an initial review of MacWilliams's motion and directed that the United States of America ("the Government") answer it. (Dkt. no. 4). On July 23, 2008, the Government filed its response, in which it argued that MacWilliams's claims should be denied because they lacked merit. (Dkt. no. 6).

On August 18, 2008, MacWilliams filed his reply, arguing that the Government had not denied the validity of the issues raised in his motion, and had resorted to "deliberately misleading, misquoting facts and circumstances relative to the issues." (Dkt. no. 7). After briefing closed, Magistrate Judge Kaull issued a very thorough R&R on October 2, 2009 (dkt. no. 8), in which he recommended that MacWilliams's motion be denied and his case dismissed with prejudice. Id. On November 18, 2009, MacWilliams filed the following specific objections to the findings in the R&R:

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

1.   his prior involuntary manslaughter conviction should have not counted toward his career offender status;

2.   counsel was ineffective because he failed to challenge the validity of the warrant;

3.   counsel was ineffective because he failed to obtain "discoverable material" concerning the substances obtained during the search of his property;

4.   counsel was ineffective when he failed to present any witnesses at the suppression hearing;

5.   counsel was ineffective because he coerced/threatened MacWilliams into pleading guilty;

6.   counsel was ineffective because he failed to thoroughly investigate MacWilliams's prior involuntary manslaughter conviction;

7.   counsel was ineffective because he had a conflict of interest with the plaintiff which was evidenced by his failure to raise important pre-trial issues and failed to subject the prosecution's case to a meaningful test;

8.   his claim for ineffective assistance of counsel resulting in coerced guilty plea had been not litigated on direct appeal; and

9.   the Government wrongfully failed to address all issues argued by MacWilliams in his § 2255 motion and should have had to do so.

(Dkt. no. 14).

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

## III. FACTUAL HISTORY

On May 2, 2006, Sergeant Jeff Orr ("Orr") of the Trumbull-Ashtabula-Geauga Law Enforcement ("TAG") Task Force, of Ashtabula County, Ohio, contacted West Virginia State Trooper J.W. Smith ("Smith") and advised Smith that he had received an anonymous tip that MacWilliams, who was wanted in Orr's jurisdiction,[2] was staying around Burnsville, West Virginia (1:06cr59, dkt. no. 26-1). More specifically, Orr relayed that MacWilliams was believed to be residing with Darlene Wollschleger ("Wollschleger") in a trailer located on Hoot Owl Hollow in Braxton County, West Virginia. According to the informant, there were two trailers on the property where MacWilliams and Wollschleger lived, one used as their home and the other used to grow marijuana. The informant also advised Orr that there were two vehicles on the property, a Landrover-type vehicle and a green Camaro-type vehicle. Id. In addition, Orr provided Smith with other information about MacWilliams, such as a photograph and the outstanding warrant for his arrest. Id.

Two days later, Smith, assisted by two other officers, traveled to Hoot Owl Hollow and discovered that the property

---

[2]MacWilliams was wanted in Orr's jurisdiction after failing to report following a conviction for complicity to trafficking in and possession of marijuana. (1:06cr59, dkt. no. 90 at 21-22).

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

described by the informant was actually located in Gilmer County, not Braxton County. Id. The officers attempted to drive up to the property, but they were stopped by a locked gate. Id. From their position at the gate, however, they were able to verify that there were two trailers on the property. Id. The next day, May 5, 2006, Smith conducted an aerial surveillance of Hoot Owl Hollow and observed the two trailers, as well as two vehicles matching the descriptions provided in the anonymous tip. Id.

On May 7, 2006, Smith arrived at the Hoot Owl Hollow location without a search warrant where, assisted by several law enforcement officers, he conducted surveillance from the woods. Id. During the surveillance, Smith observed a man he recognized as MacWilliams, and a woman, later identified as Wollschelger, leaving one trailer and walking to and entering the other. Id. As MacWilliams and Wollschelger left the second trailer, Smith and the assisting officers quickly jumped out of their hiding places and apprehended them. Id. The officers then conducted a protective sweep to secure the scene, during which they found marijuana lying atop a counter in the bedroom of the first trailer and also noticed the strong odor of marijuana coming from the second trailer, the door to which was padlocked.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

After securing the scene and arresting MacWilliams and Wollschelger, Smith prepared an affidavit and secured a search warrant from Braxton/Gilmer County Circuit Court Judge Richard Facemire. After executing the warrant, law enforcement officers discovered 260 marijuana root balls growing inside the second trailer, together with a calendar listing harvest dates for prior clippings dating back to December 2005. (1:06cr59, dkt. no. 90 at 22, 23).

Following the arrest, a federal grand jury named MacWilliams and Wollschelger in each count of a three count indictment that charged:

- Count One – conspiracy to "knowingly and intentionally manufacture, distribute and possess with the intent to distribute 100 or more marijuana plants." Id.;

- Count Two – aiding and abetting in the manufacture of 100 or more marijuana plants. Id.; and

- Count Three – using and maintaining a drug involved premises for the purpose of manufacturing, possessing with intent to distribute, distributing and using marijuana. Id.

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

After the return of the indictment, Kornbrath was appointed to represent MacWilliams (1:06cr59, dkt. no. 12) and moved to suppress evidence (1:06cr59, dkt. nos. 26 & 42), based on the initial warrantless entry by the police of MacWilliams's residential trailer, as well as the reasonableness of the protective sweep around the second trailer. (1:06cr59, dkt. no. 42). After the Government filed its responses (1:06cr59, dkt. nos. 41 & 43), Magistrate Judge Kaull held a hearing on the suppression motion and heard testimony from Smith and Sharron Calis, an investigator employed by Kornbrath's office (1:06cr59, dkt. no. 49).

Following the hearing, Magistrate Judge Kaull issued an R&R that recommended that the Court deny MacWilliams's motion to suppress. Id. Both parties objected to the R&R; before the Court could adopt or reject the R&R, however, MacWilliams signed a plea agreement to plead guilty to Count Three of the Indictment, using and maintaining a drug involved premises. (1:06cr59, dkt. no. 59). In the agreement, he stipulated and agreed that his total relevant conduct was at least 40 but less than 60 kilograms of marijuana equivalent. Id. He also stipulated and agreed that he was a career offender pursuant to U.S.S.G. § 4B1.1(a). Id. MacWilliams also

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

agreed to a limited waiver of his appellate rights, but did not waive his right to collaterally attack his sentence. Id.

MacWilliams entered his guilty plea before United States Magistrate Judge James E. Seibert on September 29, 2006. (1:06cr59, dkt. no. 90). During that hearing, MacWilliams testified under oath about his background, education, and ability to understand the proceedings. Id. The magistrate judge summarized each count of the indictment for MacWilliams and then asked the Government to summarize the plea agreement. Id. at 5-7. The magistrate judge then asked MacWilliams if he understood and agreed with the terms of the plea agreement, which MacWilliams confirmed he did. Id. He also asked MacWilliams if anything further had been agreed to, orally or in writing, that was not contained in the plea agreement, to which MacWilliams replied "no, sir". Id. Magistrate Judge Seibert asked MacWilliams if Kornbrath had explained to him how the Sentencing Guidelines worked, and elaborated that, under the law, MacWilliams could not receive a sentence greater than the twenty-year statutory maximum for the offense. Id. at 16. MacWilliams acknowledged that he had been told all of that and understood the explanation. Id. The magistrate judge then asked MacWilliams if he also understood the consequences of pleading guilty and what rights he would be

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

giving up by foregoing his right to a trial on the matter. Id. at
17-20. MacWilliams asserted that he understood all that as well.
Id. The Government then presented Smith as a witness to establish
a factual basis for the guilty plea. Id. at 21-23. After Smith
testified, Magistrate Judge Seibert asked MacWilliams if he wished
to correct or add to the testimony, to which MacWilliams stated
"no, sir." Id. at 24. MacWilliams then entered his guilty plea to
the Count Three. Id. After MacWilliams tendered his plea,
Magistrate Judge Seibert questioned him further as follows:

> THE COURT: Is your plea the result of a
> threat, coercion or harassment?
>
> THE DEFENDANT [MacWilliams]: No, sir.
>
> ...
>
> THE COURT: Has Mr. Kornbrath fully, adequately
> represented you in this matter?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Has Mr. Kornbrath left anything
> undone which you think should have been done
> in defending you against these charges?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you know of any defense to these
> charges to which you plead guilty, Count
> Three?
>
> MR. KORNBRATH: We filed a viable suppression
> motion but in exchange for not pursuing that

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

> the Government offered a plea to Count Three
> versus Counts One and Two which carried more
> time, so that's the only issue that we could
> see in this case.
>
> THE COURT: Did you voluntarily agree to that
> Mr. MacWilliams?
>
> THE DEFENDANT: Yes, sir.

Id. at 25-26.

At the conclusion of the hearing, Magistrate Judge Seibert determined that (1) MacWilliams's plea was freely and knowingly made; (2) MacWilliams was competent and capable of entering an informed plea; (3) MacWilliams understood the consequences of his plea; and (4) there was a factual basis for the plea. Id. at 26. He then prepared an R&R recommending that the Court accept MacWilliams' plea. (1:06cr59, dkt. no. 60). The R&R specifically warned both MacWilliams and the government that a failure to object within ten days of its receipt would result in a waiver of any appellate rights on the issues raised in the R&R. Id. Neither party filed objections, and on October 26, 2006, the Court entered an order adopting the R&R, accepting the plea, adjudging the petitioner guilty, and directing the United States Probation Officer to prepare a pre-sentence report ("PSR"). (1:06cr59, dkt. no. 62).

11

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

After the probation officer prepared the PSR, Kornbrath filed three objections on behalf of MacWilliams. First, he objected to language in the PSR stating that MacWilliams had "agreed" to the amount of relevant conduct, or that he had "consent[ed]" to being a career offender. Kornbrath argued that it would be more appropriate for the language in the PSR to reflect that MacWilliams had entered a plea agreement that prevented him from contesting these issues. The probation officer agreed and changed the wording of the PSR. Second, Kornbrath argued that, because MacWilliams had not been convicted of being under the influence of drugs or alcohol in connection with a prior involuntary manslaughter conviction, information to that effect should not have been included in the PSR. The probation officer refused to change the PSR, indicating that, at the time of the offense, MacWilliams had provided verbal and written statements to authorities acknowledging that he had been drinking and was high on marijuana at the time of the incident. Third, Kornbrath objected to the probation officer's conclusion that there were no mitigating factors warranting a sentence below the Guidelines range. The probation officer disagreed with this contention and refused to change the PSR.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

On February 14, 2007, the Court held a sentencing hearing, at the beginning of which MacWilliams was placed under oath. (1:06cr59, dkt. no. 89 at 2). During this hearing, MacWilliams acknowledged that he and Kornbrath had reviewed and discussed the PSR. Id. at 3. The Court then calculated the Guidelines and determined that MacWilliams's total offense level was Level Twenty-Nine (29) and his criminal history category was Category VI. Id. at 5-6. Based on this calculation, it tentatively determined MacWilliams's sentencing range under the Guidelines to be 151-188 months of imprisonment, two to three years of supervised release and a fine range of $15,000.00 to $500,000.00. Id. at 6. Neither party objected to these tentative findings. Id. The Court then gave MacWilliams the opportunity to allocute concerning any aspect of his case or any issue related to his sentence, which he declined to do. Id.

Next, Kornbrath moved for a variance from the Sentencing Guidelines pursuant to United States v. Booker, 543 U.S. 220 (2005). He argued that, although MacWilliams was technically a career offender, the Court should sentence him below the Guidelines because of the circumstances surrounding his prior involuntary manslaughter offense. Kornbrath emphasized that MacWilliams's

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

involuntary manslaughter conviction was over eighteen years old and stemmed from a "freak tragic accident" that was not the result of an intentional act of misconduct. Id. at 7-8. Kornbrath also reminded the court that MacWilliams would be serving time on a state conviction (in Ohio) following completion of his federal sentence. Further, he highlighted the fact that the instant case did not involve firearms or violence, and urged the Court to consider these factors as well in determining whether the suggested Guidelines sentence was too high. Id. at 9.

The government noted that, had MacWilliams been convicted on all three counts charged in the indictment, and not just count three, he would have faced a base offense level of thirty-four with a guideline range of 188-235 months of incarceration. Id. at 10. It also argued that MacWilliams was exactly the type of person for whom Congress intended the career offender designation, pointing out that, immediately prior to the instant offense, MacWilliams had been convicted of a significant marijuana manufacturing offense in Ohio, after which he absconded, arriving in West Virginia where he undertook another marijuana manufacturing enterprise. Based on this argument, the Government sought a sentence of 169 months of imprisonment for MacWilliams.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

In his response to the government's argument, Kornbrath suggested that, had MacWilliams been convicted of involuntary manslaughter in West Virginia, the crime would have been a misdemeanor and MacWilliams would not have been exposed to the career offender designation. He clarified that he was not arguing that the involuntary manslaughter conviction should not count toward MacWilliams's career offender status, but rather that there was a good reason for the Court to impose a variant sentence. Id. at 13.

After considering the parties' arguments, the Court found that MacWilliams was a career offender.  It pointed out the seriousness of his offense of conviction, which had occurred while MacWilliams was a fugitive from justice in Ohio. Id. It concluded that this alone outweighed any argument concerning the seriousness of the involuntary manslaughter conviction. Id. at 14-15. It then sentenced MacWilliams to 151 months of incarceration, the low end of the Guidelines range, followed by three years of supervised release. Id. at 15.

Following his sentencing, MacWilliams appealed to the United States Court of Appeals for the Fourth Circuit, which dismissed his appeal, holding he had knowingly and voluntarily waived his right

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),**
**DENYING § 2255 MOTION (DKT. NO. 1) AND**
**DISMISSING CASE WITH PREJUDICE**

to appeal. United States v. MacWilliams, 07-4253 (Nov. 20, 2007)(1:06cr59, dkt. 106 at 5). MacWilliams also filed a "Motion for an Order Compelling Release of Evidence to Appellant" in this Court (1:06cr59, dkt. no. 103), in which he sought an order directing the West Virginia State Police Forensic Laboratory to provide him with evidence related to his conviction. Id. After the Court denied this motion (dkt. no. 104), MacWilliams appealed again to the Fourth Circuit, see United States v. MacWilliams, 279 Fed.Appx 286 (4th Cir. May 8, 2008), which affirmed. Id. Following that, MacWilliams filed the instant § 2255 motion.

### IV. STANDARD OF REVIEW

In considering an R&R, the Court reviews de novo any portions thereof to which a specific objection is made, 28 U.S.C. § 636(b)(1), but may adopt, without explanation, any of the magistrate judge's recommendations to which no objections are filed. Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983). Specific objections are necessary to focus the Court's attention on the disputed issues. Smith v. Nuth, 1996 U.S. App. LEXIS 27150, *2 (4th Cir. Oct. 16, 1996). "Because general objections do not direct the court's attention to any specific portions of the report, general

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

objections to a magistrate judge's report are tantamount to a failure to object." Id.

Here, MacWilliams has generally asserted that the entire R&R was flawed, but he also has specifically objected to certain conclusions of the magistrate judge. The Court therefore will consider each of his specific objections, addressing first the claim that it erred in designating him a career offender. It will then take up his claims of ineffective assistance of counsel, conflict of interest, and the adequacy of the Government's response to his § 2255 motion.

## V. <u>ANALYSIS</u>

Pursuant to 28 U.S.C. § 2255,

> A petitioner collaterally attacking his sentence or conviction bears the burden of proving that his sentence or conviction was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack.

Further, a "motion collaterally attacking a petitioner's sentence brought pursuant to § 2255 requires that the petitioner establish his grounds by a preponderance of the evidence." <u>Sutton v. United States of America</u>, 2006 U.S. Dist. LEXIS 979, *5 (E.D.

## ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8), DENYING § 2255 MOTION (DKT. NO. 1) AND DISMISSING CASE WITH PREJUDICE

Va. Jan. 4, 2006) (citing <u>Miller v. United States</u>, 261 F.2d 546, 547 (4th Cir. 1958)).

### A. <u>CAREER OFFENDER CALCULATION CLAIM</u>

MacWilliams's claim that the Court erred in applying his prior involuntary manslaughter conviction in designating him as a "career offender" pursuant to U.S.S.G. § 4B1.2 fails. Under the United States Sentencing Guidelines, a defendant is a career offender if

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G § 4B1.1(a). Section 4B1.2(a) defines the term "crime of violence" as

> any offense under federal or state law punishable by imprisonment for a term exceeding one year that –
>
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

Additionally, application note 1 of §4B1.2 reads

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (i.e., expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

In 1989, at age 25, MacWilliams was convicted of involuntary manslaughter with a firearm specification pursuant to Ohio Rec. Code Ann. § 2903.04. Then, in August 2005, he pleaded guilty to complicity to trafficking in and possession of marijuana. Following this conviction and sentencing in Ohio, he failed to self-report as directed by the state court and became a fugitive from justice. He then absconded to West Virginia, where he resided until arrested in this case.

MacWilliams clearly qualifies as a career offender under the Guidelines. The Sixth Circuit has held that a conviction of involuntary manslaughter charged under Ohio Rec. Code Ann. § 2903.04 counts as a "crime of violence" for purposes of the

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

career offender designation under U.S.S.G. § 4B1.2(1) and 18 U.S.C. § 924(c). <u>United States v. Sanders</u>, 97 F.3d 856 (6th Cir. 1996), <u>rev'd on other grounds</u>, 187 F.3d 637 (6th Cir. 1999).[3] <u>Sanders</u> noted that "sentencing courts are required to focus on the statutory definition of the crime charged rather than the actual facts of the individual's prior conviction. <u>Sanders</u>, 97 F.3d at 859 (citing <u>Taylor v. United States</u>, 495 U.S. 575, 602 (1990)).

## B. <u>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS</u>

MacWilliams's claims of ineffective assistance of counsel by Kornbrath are subject to analysis under the two-part analysis outlined in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). First, he must show that Kornbrath's performance fell below an objective standard of reasonableness. <u>Id.</u> at 688. The Court must give great deference to counsel when scrutinizing the reasonableness of a defense attorney's actions, and "it must indulge a strong presumption that counsel's conduct falls within

---

[3]In his objections, MacWilliams states that <u>Sanders</u> has been reversed by <u>Leocal v. Ashcroft</u>, 543 U.S. 1 (2004), which held that "crime of violence," as defined in 18 U.S.C. § 16(a), does not apply to DUI offenses. This argument is flawed because the cases cited by MacWilliams in his objections do not consider "crime of violence" as defined in U.S.S.G § 4B1.2(1). Further, all the cases cited by MacWilliams concern DUI offenses, not gun or drug offenses.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

the wide range of reasonably professional assistance." Id. at 689-690. Second, if the Court finds that Kornbrath's performance was unreasonable, MacWilliams must demonstrate that he was prejudiced by the deficient representation. Id. at 689-690. To demonstrate such prejudice, he "must show there [was] a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. Id.

Further, a petitioner such as MacWilliams "who alleges ineffective assistance of counsel following the entry of a guilty plea has an even higher burden to meet." Hill v. Lockhart, 474 U.S. 52, 53-59 (1985). He must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; Hooper v. Garraghty, 845 F.2d 417, 475 (4th Cir. 1988).

### 1) *Counsel was not ineffective in declining to challenge the validity of the warrant.*

MacWilliams argues that Kornbrath was ineffective because he failed to challenge the validity of the search warrant. MacWilliams claims that the warrant was invalid because the affidavit presented

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

to secure the warrant "lacked particularity to the County, and . . . contained a false information." (Dkt. no. 14 at 3). MacWilliams, however, has offered no evidence in support of these contentions.

First, the affidavit does not lack particularity concerning the identity of the county. In fact, it specifically states that, although the confidential informant believed the property was located in Braxton County, an independent investigation determined that the property was actually located in Gilmer County. Officer Smith's affidavit clearly states that the property was located in Gilmer County and that the warrant would be executed in Gilmer County.

Second, MacWilliams has failed to show that the affidavit contained any false information. He complains at length that the informant had the wrong county, but has not highlighted where this was reported falsely by Officer Smith in the affidavit or otherwise. Again, Smith's affidavit disclosed that, while the informant believed the property was located in Braxton County, further investigation confirmed its actual location in Gilmer County. The record reflects that the affidavit was completely truthful.

22

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

MacWilliams's argument that Kornbrath's refusal to challenge the validity of the search warrant was objectively unreasonable or would have led to suppression of evidence against him also ignores the fact that Kornbrath filed a viable motion to suppress in this matter, albeit on different grounds, that was carefully weighed and considered by the magistrate judge. MacWilliams also ignores the fact that he abandoned further pursuit of the motion to suppress when he accepted the plea agreement. For all these reasons, his argument that Kornbrath's assistance was ineffective because of his failure to challenge the validity of the warrant fails to meet the Strickland standard.

> **2)  *Counsel was not ineffective in failing to obtain discoverable material which alluded to "cocaine" instead of marijuana.***

MacWilliams contends that Kornbrath was ineffective because he failed to obtain "discoverable material" concerning the substances recovered during the search of his property following his arrest. His focus is on a "Report of Investigation" prepared by the West Virginia State Police in which the words "purchased cocaine" were scratched out and the words "seized marijuana" were handwritten onto the document. This issue is a red herring. Nothing in the case suggests that MacWilliams was charged with anything related to

cocaine. It is clear from the record that more than two hundred marijuana plants were seized from his Hoot Owl Hollow property and tested at the West Virginia State Police Forensic Laboratory. Further, it is clear that the reference to cocaine was nothing more than a typographical error, that, as MacWilliams himself points out, was corrected on the actual document.

MacWilliams's argument that Kornbrath's assistance was ineffective because he failed to "discover material" concerning the typographical error in the report fails under <u>Strickland</u>.

> ### 3) *Counsel was not ineffective concerning presentation of witnesses on defendant's behalf at suppression hearing.*

MacWilliams's claim that Kornbrath was ineffective because he failed to present witnesses at the suppression hearing is completely unfounded. The record establishes that Kornbrath did present a witness at the suppression hearing, Sharron Calis, the investigator from his office, who offered testimony in support of the motion to suppress. (1:06cr59, dkt. no. 49 at 11). In addition, MacWilliams submitted no affidavits or other supporting evidence to suggest that Kornbrath failed to call a particular witness who would have offered specific testimony that would have changed the outcome of his case. Furthermore, MacWilliams himself confirmed

ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE

under oath at his sentencing hearing that Kornbrath had adequately represented him and had left nothing undone that he wished had been done. (1:06cr59, dkt. no. 90). For these reasons, MacWilliams's argument fails to meet the standard for ineffective assistance of counsel set forth in <u>Strickland</u>.

### 4) *Counsel did not coerce or threaten MacWilliams to plead guilty.*

Any argument that Kornbrath's assistance was ineffective because he coerced or threatened MacWilliams into pleading guilty is also unavailing. Magistrate Judge Kaull did not consider this argument in the R&R because he concluded that it had been litigated and ruled on by the Fourth Circuit during MacWilliams's direct appeal. In his objections to the R&R, MacWilliams asserts that his collateral coercion claim here differs from his claim of coercion on direct appeal, where he argued only that the plea was invalid because it was coerced. Here, he contends that Kornbrath's assistance was ineffective because he coerced MacWilliams into pleading guilty.

Any argument that MacWilliams was coerced or threatened into pleading guilty is foreclosed by the opinion of the Fourth Circuit dismissing his direct appeal. <u>See</u> <u>United States v. MacWilliams</u>, 254 Fed. Appx. 242 (4th Cir. 2007), where our circuit court held that

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

---

MacWilliams's plea, as well as his waiver of rights, was knowing and voluntary. Absent a change in the law, once an issue has been settled on direct appeal, it may not be attacked collaterally. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir. 1976).

Even were a claim of coercion available to MacWilliams, it would fail for lack of any evidentiary support. To support an allegation that he was coerced into pleading guilty, MacWilliams filed correspondence between himself and Kornbrath from January 2007, three to four months after he tendered his guilty plea. A careful review of the letter from Kornbrath on which MacWilliams relies, however, makes clear Kornbrath was not threatening or coercing his client, but rather explaining to MacWilliams the applicable law and recounting the information MacWilliams had considered when he pled guilty months earlier. Also weighing heavily against MacWilliams's argument is his own sworn testimony during his plea hearing on September 29, 2006, during which he testified:

> THE COURT:    Mr.  MacWilliams,  do you understand and agree with the plea agreement?
>
> THE DEFENDANT: Yes, sir.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

THE COURT: Has anything been agreed to, either orally or in writing, that is not contained in this plea agreement?

THE DEFENDANT: No, sir.

...

THE COURT: I need to advise you, Mr. MacWilliams, that because the events that underlie this charge in Count Three occurred after November 1st, 1987, the Sentencing Reform Act of 1984 is applicable to your case and the sentencing -- United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case. Have you discussed with Mr. Kornbrath how the Sentencing Commission Guidelines may apply to your case?

THE DEFENDANT: Yes, sir.

THE COURT: Has Mr. Kornbrath explained to you the various considerations which apply in determining what the sentence in your case may be under the Guidelines?

THE DEFENDANT: Yes, sir.

...

THE COURT: Do you understand the consequences of pleading guilty today?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Kornbrath, do you believe that the defendant fully and completely understands the consequences of pleading guilty?

MR. KORNBRATH: Yes, Your Honor.

### ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8), DENYING § 2255 MOTION (DKT. NO. 1) AND DISMISSING CASE WITH PREJUDICE

> ...
>
> THE COURT: Now Mr. MacWilliams, it's time to ask you how it is you plead to the charges in Count Three of the Indictment?
>
> THE DEFENDANT: Guilty.
>
> THE COURT: And most importantly, did you in fact do what the Government witness said you did that makes you guilty of Count Three of the Indictment?
>
> THE DEFENDANT: Yes, sir, I did.
>
> **THE COURT: Is your plea the result of a threat, coercion or harassment?**
>
> **THE DEFENDANT: No, sir.**
>
> **...**
>
> **THE COURT: Has Mr. Kornbrath adequately represented you in this case?**
>
> **THE DEFENDANT: Yes, sir.**
>
> **THE COURT: Has Mr. Kornbrath left anything undone which you think should have been done in defending you in these charges?**
>
> **THE DEFENDANT: No, sir.**

(Dkt. 90 (emphasis added)). Based on this information, it is clear that MacWilliams knowingly and voluntarily entered into the plea agreement, and was in no way coerced or threatened by Kornbrath. Therefore, because MacWilliams has failed to show that his

counsel's performance fell below an objective standard of reasonableness as required by <u>Strickland</u>, his claim fails.

> ***5) Counsel was not ineffective in failing to investigate MacWilliams's prior involuntary manslaughter conviction.***

MacWilliams argues that Kornbrath was ineffective because he failed to investigate the prior involuntary manslaughter conviction by not acquiring the "pleading minutes" or the "sentencing transcript" from the Ohio conviction. Contrary to MacWilliams's assertions, however, the record reflects that Kornbrath was familiar with the events leading up to the involuntary manslaughter and that further "investigation" therefore was unnecessary.

Kornbrath's performance was entirely reasonable concerning this issue. He researched whether the involuntary manslaughter provision could be used to apply the career offender designation to MacWilliams. Although he ultimately determined that the case law would not support a good faith argument that the involuntary manslaughter conviction was not a "crime of violence," he did urge the Court to consider a variance from the guidelines based upon the "freakish" nature of the incident. Additionally, Kornbrath filed a persuasive memorandum in aid of sentencing (1:06cr59, dkt. no. 77), and argued vigorously at sentencing for a variance because the

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

increased sentencing range was greater than necessary given the circumstances surrounding MacWilliams's designation as a career offender. In light of Kornbrath's efforts to obtain a variance based on mitigating factors, MacWilliams fails to meet the Strickland test for ineffective assistance of counsel concerning this issue.

## C. CONFLICT OF INTEREST CLAIM

When a petitioner claims ineffective assistance of counsel based upon a conflict of interest, he must prove (1) that counsel had an actual conflict of interest, and (2) that the conflict adversely affected his lawyer's performance. Cuyler v. Sullivan, 446 U.S. 335 (1980).

Here, MacWilliams asserts that Kornbrath had a conflict of interest because he "failed to raise important pre-trial issues" and "failed to subject the prosecution's case to a meaningful test." Despite his assertions, MacWilliams has failed to show that Kornbrath had an actual conflict of interest. He has not established that Kornbrath was representing or had represented another interested party, or had some outside adverse interest in the outcome of the matter. There is no evidence in the record that an actual conflict of interest existed, which Cuyler requires.

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

Therefore, MacWilliams's claim of ineffective assistance of counsel based upon a "conflict of interest" fails.

### D. <u>GOVERNMENT'S FAILURE TO ADDRESS ALL ISSUES</u>

Rule 5(b) of the Rules Governing § 2255 Proceedings provides:

> The answer must address the allegations in the motion. In addition it must state whether the moving party has used any other federal remedies, including any prior post-conviction motions under these rules or any previous rules, and whether the moving party received an evidentiary hearing.

MacWilliams argues that, because the Government did not specifically address all of his claims in answering his motion, as required by Rule 5(b), he is entitled to relief on those issues. MacWilliams's argument misapprehends the breadth of the Government's response to his claims.

First, to the contention that the Government did not dispute his allegation that the warrant was issued for the wrong county, the response filed by the Government includes a response to MacWilliams's allegation that counsel was ineffective because he failed to raise issues that MacWilliams wanted him to raise, including the warrant issue. (Dkt. no. 6 at 3). Second, to the contention that the Government did not dispute his allegation that Kornbrath failed to obtain "discoverable material" regarding seized

**ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8),
DENYING § 2255 MOTION (DKT. NO. 1) AND
DISMISSING CASE WITH PREJUDICE**

cocaine, as the Government points out, it clearly responded to this allegation as well. Finally, to the contention that the Government did not dispute his claim that Kornbrath was ineffective in his representation as to the plea agreement, the Government also responded to this allegation in its answer. <u>Id.</u> at 5. Thus, MacWilliams's argument that he should prevail based upon the Government's failure to respond to these allegations lacks any merit.

## VI. <u>CONCLUSION</u>

For the reasons discussed, the Court **ADOPTS** the R&R (dkt. 8), **DENIES** MacWilliams's § 2255 motion (dkt. no. 1), and **DISMISSES** MacWilliams's case **WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability as MacWilliams has not made a substantial showing of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong)(citing <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).

### ORDER ADOPTING REPORT AND RECOMMENDATION (DKT. NO. 8), DENYING § 2255 MOTION (DKT. NO. 1) AND DISMISSING CASE WITH PREJUDICE

It is so **ORDERED.**

Pursuant to Fed. R. Civ. P. 58, the Court directs the Clerk to issue a separate judgment order and to transmit copies of both orders to counsel of record and all appropriate agencies, and to the pro se petitioner via certified mail, return receipt requested.

DATED: July 14, 2010.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE